NOT DESIGNATED FOR PUBLICATION

No. 127,977

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BETHANY KING,
*Appellant*,

v.

JULIA BERNHARDT,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Submitted without oral argument. Opinion filed January 31, 2025. Affirmed.

*Bethany King*, for appellant pro se.

*Emily Carney* and *Logan Fancher*, of Stinson LLP, of Kansas City, Missouri, for appellee.

Before BRUNS, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Bethany King—who is representing herself—appeals from the district court's order striking the claims asserted in her petition filed against Julia Bernhardt. The district court struck King's claims under the provisions of the Kansas Public Speech Protection Act (KPSPA), K.S.A. 2023 Supp. 60-5320. On appeal, King contends the district court erred in granting Bernhardt's motion to strike in several ways. However, a review of the record on appeal confirms that King did not come forward with evidence that she sustained damages as a result of the alleged defamation. As a result, we conclude that the district court appropriately found Bernhardt's statements to fall under the protection of the KPSPA. Thus, we affirm.

1

King and Bernhardt reside in Milburn Fields, which is a neighborhood in Overland Park. On August 22, 2023, the Milburn Fields homeowners' association held a special meeting at Antioch Library to vote on whether to remove the association's president. The special meeting was called after King had filed a petition for the president's removal. In support of her petition, King circulated an image of Bernhardt—which was taken at a previous homeowners' association meeting—depicting Bernhardt flipping off King. The photograph of Bernhardt was posted by King on Facebook with the comment:  "'This is an image that the HOA president has created the culture of in our community where members feel safe to verbally and physically harass me for reporting racial discrimination.'"

Bernhardt spoke at the meeting considering the removal of the homeowners' association president to defend herself. She asserted that her gesture—albeit inappropriate—was not racially motivated. Instead, Bernhardt claimed that her gesture was the result of a longstanding dispute between King and members of Bernhardt's family. At the conclusion of the meeting, the members of the homeowners' association voted not to remove their president.

On December 12, 2023, King filed a pro se petition in district court against Bernhardt based on the statements made at the homeowners' association meeting. Based solely on the statements made at the meeting, King asserted a claim of defamation and alternative privacy claims. Specifically, King claimed that Bernhardt made the following false statements at the meeting:

1. "Most neighbors discuss problem situations between themselves. If you have a problem, you talk to them, you say [hey], your dog's barking in the middle of the night, hey this is happening. You know, that happens, you talk to your

2

neighbors. [King] was unwilling or unable to have that conversation with us before taking actions on minimal issues."

2. "So then she called the codes administration people because our fence, our fence was over 8ft."

3. "And you know why we have an 8ft fence, because she has 12 cameras on her house, pointing always, around. We wanted some privacy."

4. "The next-door neighbor to them, two doors down, called animal control on her(sic) because he had four dogs, you can have up to four dogs."

5. "[S]he filed an order of protection against [Person A], because he was accused of stalking for simply driving by and recording on his phone that her trash barrels were in the wrong location."

6. "[Person A] stated, 'you started this, and I will end this'. He meant legally, as you heard in front of the judge at the protection order hearing[.]"

7. "which was dismissed [restraining order against [Person A]] . . . Immediately."

8. "She was the only one who saw that I flipped her off[.]"

9. "[T]hat is the reason I flipped her off because she had pissed me off and my whole family because we live five houses down from her."

In response to the petition, Bernhardt filed a motion to strike King's petition under the KPSPA, K.S.A. 2023 Supp. 60-5320. In her motion to strike, Bernhardt asserted that King's claims were barred by the KPSPA, which is intended to prevent meritless lawsuits that chill free speech. Specifically, she asserted that King's petition was designed to deter and punish her from exercising her right to speak at the homeowners' association meeting. Bernhardt also asserted her statements "addressed common community interests" and "matters pertaining to community well-being" which fall under the exercise of the "right of free speech, right to petition, and right of association." As a result, Bernhardt requested that the district court strike the claims asserted in King's petition—and to award her reasonable attorney fees—under K.S.A. 2023 Supp. 60-5320(g).

3

On February 22, 2024, King filed a response to Bernhardt's motion to strike together with an affidavit in support of her position. In her response, King argued that Bernhardt's statements did not qualify as speech involving a "public issue or public interest" but instead involved only private matters. King further argued she had met her burden of establishing a prima facie case for defamation. Nevertheless, King did not provide any argument regarding her burden of establishing a prima facie case on the alternative claims she asserted in her petition.

The district court held a nonevidentiary hearing on March 13, 2024. After considering the arguments presented by the parties, the district court stated that it was granting Bernhardt's motion to strike. In its memorandum decision and order filed on June 7, 2024, the district court determined that Bernhardt met her burden to show that the words she expressed at the homeowners' association meeting fell within the protections of the KPSPA. The district court further found that Bernhardt's words fell within the right of association and the right of free speech under K.S.A. 2023 Supp. 60-5320(d).

Having found that Bernhardt met her burden of proof under K.S.A. 60-5320(d), the district court then shifted its analysis to determining whether King had demonstrated a likelihood of prevailing on the merits of her claims by presenting substantial competent evidence to support a prima facie case. In finding that King had failed to do so, the district court concluded that she had not come forward with affirmative evidence of damage to her reputation as required by Kansas law. In addition, the district court separately analyzed each of the nine statements made by Bernhardt that King alleged to be defamatory and concluded none of them rose to the level of defamation.

Regarding King's alternative claims, the district court also determined that she had failed to meet her burden to show a likelihood of prevailing on either claim. Regarding King's claim that Bernhardt painted her in a false light, the district court adopted an analysis similar to that used to decide her defamation claims, but also found that King

4

had failed to come forward with evidence of malice or an intent to do harm. Finally, the district court found that King had failed to come forward with evidence to show that her reputation had been damaged by the statements made by Bernhardt at the homeowners' association meeting or that they were "highly offensive to an objectively reasonable person."

In conclusion, the district court explained that although it regretted the unfortunate conflict that had developed between the two neighbors, it found:

> "[T]his is exactly the type of claim that the legislature contemplated would not be permitted to chill speech at homeowner's association meetings, city council meetings, or similar proceedings. The public should be entitled to speak. People may agree with it. People may disagree with it. As long as the speech is not false and defamatory, which the Court agrees is not protected, the KPSPA prohibits such claims attacking that speech."

Thereafter, King filed a timely notice of appeal.

ANALYSIS

Ultimately, the sole issue presented in this appeal is whether the district court erred in granting Bernhardt's motion to strike under K.S.A. 2023 Supp. 60-5320. Our standard of review when reviewing a district court's order granting a motion to strike under K.S.A. 2023 Supp. 60-5320 is de novo—or unlimited—because we are in the same position as the district court in answering the legal question presented. *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 136-37, 499 P.3d 1136 (2021); see *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017). Likewise, to the extent our analysis requires interpretation of K.S.A. 2023 Supp. 60-5320, our review is unlimited. See *Roe v. Phillips County Hospital*, 317 Kan. 1, 5, 522 P.3d 277 (2023).

*Kansas Public Speech Protection Act*

In 2016, the Kansas Legislature enacted K.S.A. 60-5320, the KPSPA, which is also known as the anti-SLAPP statute. See L. 2016, ch. 58, § 1. Anti-SLAPP statutes are intended to prevent meritless lawsuits that chill free speech. The acronym SLAPP stands for "'strategic lawsuits against public participation.'" *Doe*, 61 Kan. App. 2d at 135. As this court has explained:

> "In what has become known as a SLAPP lawsuit, a party (often a large corporation) files a nonmeritorious claim in order to silence an outspoken critic by tying up the defendant in litigation and draining the defendant's resources. 33 Loyola L.A. L. Rev. at 802-05. Thus, SLAPP lawsuits are perceived as having a chilling effect on free speech. 33 Loyola L.A. L. Rev. at 805. For that reason, as early as 1992, state legislatures began enacting what is known as anti-SLAPP statutes. *André, Anti-SLAPP Confabulation and the Government Speech Doctrine,* 44 Golden Gate U. L. Rev. 117, 118-19 (2014). The hallmark of these statutes is the ability of a defendant to file an early 'motion to strike' so the court can make an initial determination whether the lawsuit has been filed to harass the defendant or to stifle the defendant's right of free speech. 44 Golden Gate U. L. Rev. at 119." *T&T Financial of Kansas City v. Taylor*, No. 117,624, 2017 WL 6546634, at *3 (Kan. App. 2017) (unpublished opinion).

Our Legislature has directed that the provisions of the KPSPA should "be applied and construed liberally [by Kansas courts] to effectuate its general purposes." K.S.A. 2023 Supp. 60-5320(k).

> "The purpose of the public speech protection act is to encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law, while at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2023 Supp. 60-5320(b).

6

To effectuate this purpose, the KPSPA "'provides a procedural remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit.' [Citation omitted.]" *Doe*, 61 Kan. App. 2d at 135. The remedy allows a party to move to strike a claim if the claim "is based on, relates to or is in response to [that] party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2023 Supp. 60-5320(d). A 2022 Kansas Bar Association Journal article suggests that the Act "represents a dramatic departure from typical civil litigation in Kansas" and "provides a mechanism not otherwise available under the Kansas Rules of Civil Procedure for a defendant to seek early dismissal of an action via motion to strike prior to filing an answer." Phillips and Willoughby, *Game-Changer?: The Kansas Public Speech Protection Act*, 91 J.K.B.A. 27, 27 (November/December 2022).

*Motion to Strike*

An analysis of whether a motion to strike under the KPSPA should be granted requires a two-step process. First, if the movant makes a prima facie case showing that a claim concerns the party's exercise of one of these rights, the burden shifts to the other party to establish a likelihood of prevailing on their claim by presenting substantial competent evidence to support a prima facie case. K.S.A. 2023 Supp. 60-5320(d). As this court has found, "[s]ubstantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion." *Fisher v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 421, 423, 471 P.3d 710 (2020).

Looking at the first step in this case, the district court found that Bernhardt's statements at the homeowners' association meeting fell under the exercise of the right to free speech as well as the exercise of the right of association. This is because the statements were made in connection to a public issue or matter of public interest and consisted of communication between individuals who came together to collectively express, promote, pursue or defend the common interests of the homeowners' association.

The "'[e]xercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue or defend common interests." K.S.A. 2023 Supp. 60-5320(c)(3).

It is undisputed that the August 22, 2023 meeting was held to vote on King's petition pursuing the removal of the president of the homeowners' association. The district court found the leadership of the homeowners' association was a "common interest" and Bernhardt's communication was made in that context. King does not challenge the district court's finding that Bernhardt's statements fall under the right of association under the KPSPA. Instead, King focuses her challenge on the district court's finding that the statements fell under the right of free speech.

Since King fails to challenge the district court's finding that Bernhardt was exercising her right of association, she has abandoned any argument that the statements were not made under the exercise of the right of association. Although a few of her case citations reference the right of association, King makes no argument that Bernhardt's statements did not fall under the right of association as expressly found by the district court. As such, we conclude that King has waived any argument regarding the first step of the KPSPA. See *Great Plains Roofing & Sheet Metal, Inc. v. K Building Specialties, Inc.,* 62 Kan. App. 2d 204, 232, 510 P.3d 1172 (issue not briefed is deemed waived or abandoned), *rev. denied* 316 Kan. 756 (2022).

Accordingly, we may assume that Bernhardt established a prima facie case that the statements she made at the homeowners' association meeting fell under the KPSPA. Consequently, the burden shifts to King to establish a likelihood of prevailing on her claim of defamation or her alternative claims. To meet this burden, King is required to come forward with substantial competent evidence to support a prima facie case. See K.S.A. 2023 Supp. 60-5320(d).

Regarding this question, the district court found that King failed to establish a prima facie case to support her claim of defamation or to support her alternative claims. Significantly, we note that King does not provide any argument in her brief regarding her alternative claims of false light and publicity given to private life. Moreover, we note that the district court considered this question regarding her alternative claims and concluded that she had failed to present substantial competent evidence to establish a prima facie case as to either claim.

In particular, the district court found the statements did not meet the requirement of being "highly offensive to an objectively reasonable person." See *Dominguez v. Davidson*, 266 Kan. 926, Syl. ¶ 7, 974 P.2d 112 (1999) (for false light claim, the representation must be "highly offensive to a reasonable person"); *Werner v. Kliewer*, 238 Kan. 289, 295-96, 710 P.2d 1250 (1985) (for a publicity given to private life claim, the representation must be "highly offensive to a reasonable person"). Because King makes no argument as to why the district court was in error in reaching this conclusion, we find that she has waived any argument regarding those claims. See *Great Plains Roofing*, 62 Kan. App. 2d at 232.

Accordingly, we turn to the question of whether King came forward with substantial competent evidence to support a prima facie case on her claim of defamation. K.S.A. 2023 Supp. 60-5320(d). To establish a prima facie case of defamation, King must come forward with evidence tending to show that Bernhardt knowingly communicated false and defamatory words to a third person. Furthermore, she must come forward with evidence tending to show that Bernhardt's statements injured her reputation. See *Marcus v. Swanson*, 317 Kan. 752, 755-56, 539 P.3d 605 (2023); *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495 (2002).

In finding that King had failed to meet her burden to establish a prima facie case of defamation, the district court determined that she had failed to present any evidence to

show that her reputation was damaged. The district court noted that the Kansas Supreme Court has recently reiterated that the damage to reputation "'is the essence and gravamen'" of an action for defamation. *Marcus*, 317 Kan. at 758 (citing *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 6, 649 P.2d 1239 [1982]). In addition, our Supreme Court explained that in the *Gobin* case, it had previously abolished defamation per se and presumed damages. *Marcus*, 317 Kan. at 764. Consequently, damages to one's reputation must be established by proof and not merely by speculation. 317 Kan. at 765. In *Marcus*, the court held that the plaintiff did not make a submissible case even though he personally testified that he thought his reputation and business were damaged. 317 Kan. at 759-60, 764.

In her brief, King asserts for the first time that she has endured "victimization in multiple crimes, death threats," and that her petition to vote on removing the homeowners' association's president cost her "hundreds of dollars in private funds." But King did not present any evidence to support this assertion to the district court, and we find no such evidence in the record on appeal. Likewise, it is not appropriate to raise this assertion for the first time on appeal. See K.S.A. 2023 Supp. 60-5320(d) (limiting the court's determination of whether plaintiff has established a prima facie case to the pleadings and supporting and opposing affidavits stating the facts upon which the liability is based). Although King contends that the district court ignored evidence in her supporting affidavit, we do not find the affidavit to contain any evidence regarding damages.

Additionally, we note that the district court separately examined each of the statements made by Bernhardt at the homeowners' association meeting that King alleged in her petition to be defamatory. After doing so, the district court determined that none of the statements rose to the level of defamation. Moreover, based on our review of these statements, we do not find the district court's conclusion to be erroneous. Rather, we find that the district court reached the correct conclusion.

10

A review of the record on appeal—including King's petition, her response to Bernhardt's motion to strike, and her supporting affidavit—reveals that King failed to present any evidence of damages other than her own unsupported speculation as to damage to her reputation. Unless injury to reputation can be shown, King cannot establish a valid claim of defamation. See 317 Kan. at 758. Under the second step of the analysis, King must establish a likelihood of prevailing on her claim by presenting substantial competent evidence to support a prima facie case on each of her claims. See K.S.A. 2023 Supp. 60-5320(d). In this case, King has failed to do so. As such, the district court properly granted Bernhardt's motion to strike under the KPSPA.

Affirmed.